## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICHAEL SMITH,                                  &ast;
individually and on behalf of all               &ast;
similarly situated individuals,                 &ast;
&ast;
Plaintiff,                           &ast;
&ast;        Civil Action No. 8:21-cv-02746-PX
&ast;
&ast;
v.                                      &ast;
&ast;
EXAMWORKS, LLC, *et al.*,                        &ast;
&ast;
Defendant.                           &ast;
&ast;
&ast;&ast;&ast;

## MEMORANDUM OPINION

Pending before the Court in this consumer protection action are the motions for summary judgment filed by Defendants ExamWorks, LLC ("ExamWorks") and Government Employees Insurance Company ("GEICO") (collectively, "Defendants"). ECF Nos 93 & 96. No hearing is necessary. D. Md. Loc. R. 105.6. The motions are denied for the following reasons.

### I.    Background

Unless otherwise noted, the following facts are undisputed and construed most favorably to Plaintiff Michael Smith ("Smith") as the non-moving party. On April 30, 2021, Renada Jenkins ("Jenkins"), her husband, and Smith were involved in a car accident. *See* ECF No. 95-1; ECF No. 104-1 at 16. The next day, Jenkins filed a claim with her insurance provider, GEICO. ECF No. 101-23 at 6; ECF No. 104-1 at 16.

On May 12, 2021, GEICO sent Jenkins a link asking her to complete additional forms online related to her claim. ECF No. 101-3 at 2. When she logged in to the GEICO mobile app to complete the forms, she was prompted to provide the name, phone number, and age of any

passengers in the car at the time of the accident.  ECF No. 104-2 at 2; ECF No. 104-3 at 2; ECF No. 104-4 at 2.

The parties dispute what happened next.  GEICO's records show that Jenkins entered Smith's information into the claim form, including a cell phone number for him ending in 8391. ECF No. 95-1.  Although Jenkins could not specifically remember what number she provided on the form, she testified that she gave GEICO "whatever number that [Smith] told [her] to list at that time [she] was doing the claim."  ECF No. 101-23 at 7.  Smith, however, attests that he could not possibly have given Jenkins the 8391 number because "it wasn't a number that [he] put in [his] brain to know because [he] wasn't giving it out."  ECF No. 101-18 at 14.  Instead, Smith recalls having given Jenkins his primary phone number ending in 7208.  *Id.* at 9.  GEICO did not ask, via the form or in any other way, whether Jenkins had obtained Smith's consent for GEICO to contact him directly using that number.  *See* ECF Nos. 104-3 & 104-4.

As for the purpose of the 8391 number, Smith used that number (and the cell phone attached to it) for activities that tended to burn the battery on his main cellphone.  ECF No. 101-18 at 9.  Specifically, he used the 8391 number at the gym to listen to music and for "Facetime" calls.  *Id.* at 9–10, 13.  Around the time of the accident, Smith was speaking with Mr. Jenkins via Facetime "[e]very other day" on the 8391 number.  *Id.* at 11.  Contemporaneous phone records also reflect that Smith used his 7208 number far more than the 8391 number.  Between August 1 and September 30, 2021, Smith received over 750 incoming calls to the 7208 number and only about 50 incoming calls to the 8391 number.  *Compare* ECF No. 101-19, *with* ECF No. 101-20; *see also* ECF No. 101-18 at 12–13.

Within a day or two after Jenkins supplied Smith's information to GEICO, Christopher Martineau, Smith's attorney, informed GEICO in writing that he "ha[d] been retained to

represent Mr. Smith" regarding the April 30, 2021, accident.  ECF No. 101-10 at 2.  The letter

also notified GEICO that "[a]ll future correspondence with respect to Mr. Smith's case shall go

through [the attorney's] office."  *Id.*; *see also* ECF No. 101 ¶ 15.  Also, by separate

contemporaneous correspondence, the attorney advised GEICO that "any and all authorizations

provided by my client prior to my representation are now revoked," and that GEICO must "cease

any further use of any such authorizations."  ECF No. 101-11 at 3; *see also* ECF No. 101 ¶ 17.

GEICO, in turn, updated its internal files to reflect that all communications regarding Smith must

go through Smith's attorney.  ECF No. 104-5 at 8; ECF No. 104-7 at 7.

Smith ultimately sought coverage from GEICO for injuries he sustained in the accident.

*See* ECF No. 101-11 at 3.  In connection with that claim, GEICO required that Smith undergo an

independent medical exam ("IME").  ECF No. 104-13 at 2.  To facilitate the scheduling of that

exam, GEICO used its vendor, ExamWorks.   *See* ECF No. 101-13 at 2.

Specifically, per the Defendants' business arrangement, ExamWorks scheduled the IME

with Smith on GEICO's behalf.  *See* ECF No. 101-14 at 4.  Also at GEICO's direction,

ExamWorks sent prerecorded appointment reminder calls to all numbers listed on the IME

request form.  ECF No. 101-15 at 8, 13–15.  ExamWorks first coordinated through counsel to

schedule his IME for August 21, 2021, and then sent daily prerecorded reminder calls to Smith's

8391 number between August 16 and 20, 2021.  ECF No. 101-14 at 5; ECF No. 104-8 at 2–3;

ECF No. 101-13 at 2.  Consistent with its business practice, ExamWorks performed no due

diligence to determine whether Smith agreed to receive these automated reminder calls at all or

to the number that GEICO provided.  ECF No. 93-5 at 19, 21; ECF No. 101-14 at 10; ECF No.

101-15 at 5–6.

Smith attended the August 21, 2021, IME, which was cut short when Smith wished to record the appointment.  *See* ECF No. 101-17 at 3.  On August 24, 2021, GEICO directed ExamWorks to schedule a second IME for Smith.  ECF No. 101-8 at 11.  Again, ExamWorks contacted Smith's attorney to reschedule the appointment.  *See* ECF No. 101-14 at 7.  The attorney refused to reschedule, ECF No. 101-17 at 3, and GEICO instructed ExamWorks to schedule it anyway.  ECF No. 101-14 at 7; ECF No. 104-8 at 3.  The appointment was reset for September 25, 2021.  *See* ECF No. 104-8 at 3.

In the interim, on August 30, 2021, Smith's attorney advised GEICO in writing that Smith would not attend the appointment and that GEICO must cancel it.  ECF No. 101-17 at 3.  Nonetheless, between September 20 and 24, 2021, Smith received daily prerecorded calls reminding him of the appointment.  ECF No. 104-8 at 3–4; *see* ECF No. 101-15 at 11.

On September 24, 2021, Smith's attorney notified ExamWorks in writing that Smith had "received an unsolicited text message and pre-recorded voice call to his cell phone"; that Smith had not consented to any direct communication with ExamWorks; and that ExamWorks must cease all communications for any reason.  ECF No. 101-17 at 3.  After receiving the letter, ExamWorks did not communicate directly with Smith again.  ECF No. 101-14 at 8.

On October 25, 2021, Smith filed a two-count class action Complaint against GEICO and ExamWorks, alleging that Defendants had negligently and willfully violated the Telephone Consumer Protection Act of 1991 (the "TCPA"), 47 U.S.C. § 227, by placing nonconsensual and non-emergency prerecorded calls.  ECF No. 1.   Defendants answered the Complaint, ECF Nos. 30 & 31, and discovery ensued.

On May 20, 2022, ExamWorks sought leave to file for summary judgment in its favor on both TCPA counts, arguing that Smith had "given prior express consent to receiving calls" at the

number that ExamWorks had used, via GEICO as its intermediary.  ECF No. 44.  Thus,

according to ExamWorks, this consent vitiates the claims as a matter of law.  *Id.*  The case was

then referred to United States Magistrate Judge, Gina Simms, for all discovery disputes and

related scheduling.  ECF No. 53.   Judge Simms set the dispositive motions deadline on the

question of consent.  ECF No. 89.  The matter is now fully briefed and ready for resolution.[1]

## II.        Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most

favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the

movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing

a properly supported motion for summary judgment 'may not rest upon the mere allegations or

denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a

genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522

(4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see also Williams v. Giant Food Inc.*, 370

F.3d 423, 433 (4th Cir. 2004) ("[The nonmoving party's] self-serving opinion . . . cannot, absent

objective corroboration, defeat summary judgment.").  "A mere scintilla of proof . . . will not

suffice to prevent summary judgment[.]"  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

But "a court should not grant summary judgment 'unless the entire record shows a right to

judgment with such clarity as to leave no room for controversy and establishes affirmatively that

the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman &*

*Assocs., Inc*., 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna*

*Casualty & Sur. Co*., 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of

---

[1] On December 14, 2022, the case was reassigned to this Court following the Honorable Judge Paul W. Grimm's
retirement from the bench.

proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted. *Celotex*, 477 U.S. at 322.

### III.   Analysis

Congress enacted the TCPA in response "to a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020). Consumers viewed these calls as an "invasion of privacy regardless of the content or initiator of the message," and Congress decided that banning them "was the only effective means of protecting consumers." *Id.* (internal citation and quotation marks omitted). The TCPA accomplishes this goal by "impos[ing] various restrictions on the use of automated telephone equipment," and "tough penalties for violating the robocall restriction." *Id.*

Smith alleges that Defendants violated § 227(b) of the TCPA by sending prerecorded calls to his cell phone. *See* ECF No. 1 ¶¶ 37–48. Section 227(b) permits a private right of action against any entity that places non-emergency robocalls to cell phones. *See Barr*, 140 S. Ct. at 2344. Specifically, the plaintiff may establish a TCPA violation by showing that "an automatic telephone dialing system or an artificial or prerecorded voice" placed a call to his cell phone without "prior express consent." § 227(b)(1). By contrast, where the plaintiff has provided such consent, the cause of action shall not lie. *See id.*

The TCPA further empowers the Federal Communications Commission (the "FCC") to implement regulations and promulgate binding regulatory orders defining the reach of the TCPA's autodialing prohibitions. *See* § 227(b)(2)(B) (FCC may create exemptions to statutory liability "by rule or order"); *see also Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 681 (D. Md. 2017) (collecting cases); *Derossett v. Jonathan C. Patrowicz, D.O., P.A.*, No. DKC 21-

1294, 2022 WL 4448859, at *9 (D. Md. Sept. 23, 2022).  The FCC has interpreted "prior express consent" to encompass a person's knowing provision of his telephone number "for a particular purpose."  *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 P2p All. Petition for Clarification*, 35 F.C.C. Rcd. 6526, 6530 ¶ 13 (2020).  This is so because the knowing release of a phone number "for a particular purpose," in effect, constitutes "permission to be called at" that number "absent instructions to the contrary."  *Id.* (internal citation and quotation marks omitted).

As to the manner of obtaining consent, the caller may receive consent either directly from the person or through a third-party intermediary.  *In re Groupme, Inc./skype Commc'ns S.A.R.l Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, 3444 (2014).  Importantly, however, "an intermediary can only convey consent that has actually been obtained, and cannot provide consent on behalf of another party."  *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7990–91 (2015), *set aside in part on other grounds*, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).

The parties do not meaningfully dispute that GEICO constitutes a third-party intermediary which theoretically could have furnished to ExamWorks Smith's consent to receive autodialed calls on the cell phone with the number ending in 8391.  *See* ECF No. 93-1 at 3; ECF No. 96-1 at 11; ECF No. 105 at 6.  Rather the parties dispute whether Smith ever gave such consent to GEICO in the first instance.  ECF No. 93-1 at 5–6; ECF No. 96-1 at 11–12; ECF No. 101-23 at 7.  Although GEICO asks this Court to conclude as a matter of law that Jenkins' provision of the 8391 number constitutes Smith's consent, the Court cannot agree.  *See* ECF No. 96-1 at 11–14.

Smith testified that he did not give Jenkins the 8391 number to give to GEICO.  ECF No. 101-18 at 9.  He explained that the phone associated with the 8391 number was not his primary point of contact, and that he used the 8391 number for limited recreational purposes to include Facetime and other apps which had been draining the battery on his primary phone.  *Id.* at 13.  Smith's phone records corroborate that he used the 7208 number most of the time.  ECF Nos. 101-19 & 101-20.  Smith also explained that he had been FaceTiming with Jenkins's husband on the 8391 number, and so it is possible that she obtained the number through those calls, and not from Smith.  ECF No. 101-18 at 9, 11.   Viewing the record most favorably to Smith, a reasonable juror could conclude that Smith did not give Jenkins the 8391 number for inclusion on the GEICO form, thus eviscerating any possible theory of "consent" to receive autodial calls on that number.

In response, Defendants invite the Court to disregard Smith's testimony as little more than "self-serving opinion" and "speculation," insufficient to create a genuine factual dispute.  ECF No. 96-1 at 12; ECF No. 93-1 at 9–10.  While it is true that "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment,'" *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)), that is not this.  *Cf. Williams*, 370 F.3d at 433 (plaintiff's "testimony that she believed her evaluations to be 'unfair and untrue and incorrect'" was self-serving opinion).  Smith attested to specific facts, not opinions.  He testified that he did not provide Jenkins with the 8391 number, as it was his custom and practice to not use that number for routine communications.  ECF No. 101-18 at 9, 11.  Phone records corroborate his testimony.

ECF Nos. 101-19 & 101-20.   Accordingly, Smith's testimony is sufficient to defeat summary

judgment on the question of consent.[2]

Alternatively, even if somehow the Court could grant summary judgment on whether

Smith's initial furnishing of the 8391 number qualifies as express prior consent, a genuine issue

of fact exists as to whether Smith immediately revoked that consent through his counsel.  The

FCC has made clear, "a called party may revoke consent" to receive prerecorded calls "at any

time" and "in any reasonable manner that clearly expresses his or her desire to not receive further

calls." *In re Rules & Reguls.*, 30 F.C.C. Rcd. at 7993, 7999.  Such revocation need not take on a

particular form so long as it conveys that the caller must "'cease' further 'contact,'" *Derossett*,

2022 WL 4448859, at *11 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037,

1048 (9th Cir. 2017)).

Smith has generated sufficient evidence that on the same day Jenkins provided GEICO

with the 8391 number, Smith's attorney instructed GEICO that "[a]ll future correspondence with

respect to Mr. Smith's case shall go through [his] office."  ECF No. 101-10 at 2.  Counsel also

made clear that "any and all authorizations" Smith had previously provided GEICO prior to

counsel's representation "are now revoked."  ECF No. 101-11 at 2.  GEICO certainly understood

this revocation to include the manner and method of communicating with Smith, as the insurance

company updated its internal records to direct all communications to Smith's attorney.  ECF No.

104-5 at 8; ECF No. 104-7 at 7.  Based on these letters, there remains a question of fact as to

---

[2] Defendants also argue that Smith's contradictory statements about how often he used the 8391 number preclude summary judgment.  ECF No. 93-1 at 10; ECF No. 96-1 at 13; ECF No. 93-1 at 10.   The Court views these inconsistencies as going to the weight, not admissibility, of the evidence, which cannot factor into the Court's summary judgment determination.  *See Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

whether Smith effectively revoked his consent, to the extent he gave it in the first place.  *Cf.*

*Alvarado v. Credit Prot. Ass'n, L.P.*, No. 8:14-447-T-33TGW, 2015 WL 1815863, at *13 (M.D.

Fla. Apr. 22, 2015) (denying summary judgment on revocation issue when plaintiff's attorney

sent letter accusing defendant of violating TCPA).

In response, ExamWorks argues that Smith's correspondence cannot legally constitute

revocation of consent as to it because ExamWorks did not receive the letters.  ECF No. 93-1 at

13.  Again, a genuine factual dispute exists on this point.  GEICO's corporate representative,

Yolanda Walker, testified that once Smith's attorney directed GEICO to communicate with

counsel (not Smith), GEICO conveyed that same instruction to ExamWorks.  ECF No.  104-5 at

15 ("Q: Are you saying that GEICO told ExamWorks that it . . . should only contact Mr. Smith's

attorney and it should never contact Mr. Smith directly?  A: Correct.").  GEICO's records

corroborate that as of May 14, 2021, GEICO listed Smith's attorney as its "first contact" for

Smith's claim.  ECF No. 104-1 at 8.  Thus, a reasonable factfinder could conclude that

ExamWorks, as GEICO's vendor, was notified well before the autodial calls were placed not to

contact Smith *at all*, undermining any claims that ExamWorks had obtained Smith's express

prior consent.  Summary judgment is therefore denied as to both Defendants.

## IV.    Conclusion

For the foregoing reasons, Defendants' motions for summary judgment are DENIED.  A

separate Order follows.


February 14, 2024
Date

/s/
Paula Xinis
United States District Judge