**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MICHAEL SMITH, individually and on behalf of all similarly situated individuals, Plaintiff, | * | Civil Action No. 8:21-cv-02746-PX |
| v. | * | |
| EXAMWORKS, LLC, *et al.*, Defendants. | * | |

***

**MEMORANDUM OPINION**

Pending in this consumer protection action is Plaintiff Michael Smith ("Smith")'s motion to certify a class of insurance claimants who received prerecorded appointment reminder calls related to their claims. ECF Nos. 193 & 194.[1] Also pending are the motions to exclude Smith's expert, Aaron Woolfson, filed by Defendants Government Employees Insurance Company ("GEICO") and ExamWorks, LLC ("ExamWorks"), ECF Nos. 206, 207, 210, 212, & 248; ExamWorks's motion for nonmonetary sanctions and an in-person hearing, ECF No. 209; Smith's motion to strike certain exhibits upon which ExamWorks relies in its opposition to class certification, ECF No. 232; and ExamWorks's motion for leave to file a surreply, ECF No. 242. After a hearing, and for the reasons discussed below, the motion to certify the class is denied, and the remaining motions are granted in part and denied in part.

[1] The parties have also filed several motions to seal exhibits. ECF Nos. 195, 205, 208, 214, 222, 225, 228, 231, & 236. Sealing is proper where the movant can show that sealing "serves an important governmental interest, and that there is no less restrictive way to serve that governmental interest." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The parties agree that certain protected information compels sealing, and the Court concurs. The motions are granted, as is the motion for leave to file excess pages at ECF No. 219.

## I. Background

This class action concerns whether ExamWorks, a scheduler for independent medical examinations ("IMEs"), violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, when it issued thousands of prerecorded telephonic reminder messages to claimants seeking insurance coverage for injuries sustained in auto accidents. ECF No. 194 at 1. The TCPA was enacted to curb "intrusive automated marketing communications." *Davis v. Cap. One, N.A.*, Civil Action No. 1:22-cv-00903, 2023 WL 6964051, at *1 (E.D.V.A. Oct. 20, 2023), *aff'd*, No. 24-1507, 2025 WL 2445880 (4th Cir. Aug. 26, 2025) (citing *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019)). While the statute "prohibit[s] almost all robocalls to cell phones," *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 615 (2020), it exempts calls made with the receiving party's consent to be called for "a particular purpose," *Derossett v. Patrowicz*, Civil Action No. DKC 21-1294, 2022 WL 4448859, at *10 (D. Md. Sep. 23, 2022); *see Davis*, 2025 WL 2445880, at *2 (4th Cir. 2025).

Section 227(b)(1)(A) of the TCPA reads:

> **(b) Restrictions on use of automated telephone equipment**
>
> **(1) Prohibitions**
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make *any call* (other than *a call* made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . .

*Id.* (emphasis added).

Smith seeks to represent a class of GEICO claimants to whom GEICO and ExamWorks may be held liable for TCPA violations based on prerecorded, non-telemarketing, appointment

reminder calls made to their cell phones. ECF No. 194 at 2. The class, more particularly, is defined as:

> (1) All persons in the United States who were called with a pre-recorded voice message by ExamWorks (or any party on behalf of ExamWorks); (2) to their cellular telephone provided to ExamWorks by GEICO; (3) during the four-year period prior to filing the complaint in this action through the date of certification; and (4) where the called party did not provide the cellular number called to ExamWorks.

*Id.*

After class certification discovery concluded, Smith asks this Court to certify the class on the theory that ExamWorks's prerecorded appointment reminder calls lacked requisite consent for those claimants who did not directly provide ExamWorks with their cell phone number. ECF No. 230 at 9. Yet, under any theory of consent under the TCPA, the class fails. To understand why, the Court summarizes first how GEICO refers claimants to ExamWorks for IME scheduling and next ExamWorks's process for scheduling those IMEs with individual claimants.

**A. GEICO's Claims Process**

GEICO provides automobile insurance to individuals throughout the United States. ECF No. 203-1 ¶ 16. In connection with that service, GEICO obtains insureds' contact information, including phone numbers, at various points in the ordinary course of business. *Id.* ¶¶ 17–32. Whenever an individual—insured or otherwise—makes a claim for coverage, known as a First Notice of Loss ("FNOL"), GEICO obtains the individual's best contact information, including the claimant's preferred phone number. *Id.* ¶ 21; ECF No. 204-1 at 11–13 ("[W]e always ask them, like what is the best number that they want to be contacted on . . . ," *id.* at 13). In fact, "there is no way to handle a claim without" some phone interaction between GEICO and the claimant. *Id.* at 14.

When a claimant submits a FNOL by phone, the call is routed to a GEICO customer service representative ("CSR") trained to handle the calls. ECF No. 203-1 ¶ 22; *see* ECF No. 204-1 at 10–11. Among other questions, the CSR must ask the claimant for a "Best Number to Contact." *Id.* at 13; ECF No. 204-2 at 6–7. The CSR next inputs the answers into GEICO's internal claims management system called "ATLAS." ECF No. 203-1 ¶ 22; *accord* ECF No. 204-1 at 5. Claimants may also provide best-contact phone numbers through GEICO's mobile application or website in connection with the claims process. *Id.* at 19. CSRs also must "contact all parties involved in the loss," at which point the CSR typically obtains or confirms the best contact phone number for the claimant. ECF No. 204-3 at 3, 18. If a claimant retains counsel, the lawyer may modify or withdraw consent to be contacted. ECF No. 203-1 ¶¶ 28–32. Throughout the process, ATLAS automatically updates and populates the claimant's preferences regarding contact phone numbers for claimants. *Id.* ¶ 25.

**B. GEICO Referrals to ExamWorks for Scheduling IMEs**

When a claim concerns coverage for medical treatment, GEICO may require that the claimant receives an IME. *See* ECF No. 204-1 at 3. GEICO hires third-party vendors such as ExamWorks to schedule and coordinate those IMEs with the claimants. *Id.*; *see, e.g.*, ECF No. 194-1. ExamWorks first becomes involved when GEICO transmits a referral through several methods, including email or phone call, to an ExamWorks scheduler. ECF No. 213-5 at 7–8. Once the contact is made, the scheduler receives the claimant's information stored in ATLAS, including the claimant's best-contact phone number obtained during the claims process. *See* ECF Nos. 194-7 at 4 & 203-1 ¶ 22–23.

ExamWorks schedulers next call the claimant or claimant's counsel to schedule the IME with the appropriate medical provider near where the claimant resides. ECF No. 194-4 at 2, 4.

Although the phone calls are not recorded, schedulers are trained to obtain from the claimant a best callback number. ECF No. 213-7 at 5–6; *see* ECF No. 213-6 ¶¶ 40, 42–44; *see also* ECF No. 194-5 at 6. Or, if a claimant has an attorney, the scheduler will contact the attorney to schedule the IME. ECF Nos. 194-4 at 2, 4 & 194-5 at 5. On those occasions where the scheduler has tried and failed to reach the claimant, the scheduler will simply schedule the IME for two or three weeks later to give ExamWorks time to reach the claimant. ECF No. 194-4 at 4.

Once the IME is scheduled, the scheduler often issues reminder calls to the claimant. *See id.* The reminder calls can be automated using ExamWorks's Twilio system, but they need not be. ECF No. 194-5 at 5. If Twilio is used, the software prerecords the claimant at the number ExamWorks has on file and plays the following message:

> This is an important message for [claimant's name] regarding an upcoming medical examination from ExamWorks . . . . Please press 2 to confirm this appointment. If you have any questions regarding this appointment, please press 3 to be connected with an office representative or call (952) 229-8500. To repeat this message please press 9. Thank you.

ECF No. 194-8.

In the Twilio system, the scheduler can also populate a "pop-up" box which may, but does not always, state whether the claimant has opted out of automated phone messages. ECF No. 194-5 at 6.

Smith, the putative class representative, is not a GEICO insured. ECF No. 169 ¶ 15. Rather, he made a claim for injuries sustained while he was a passenger in a vehicle driven by a GEICO insured. *Id.* The insured processed the claim through GEICO's online app and included one of two cell phone numbers belonging to Smith, and which Smith contends he never gave the insured. ECF Nos. 104-2 at 2, 104-3 at 2, 104-4 at 2, & 213-10 at 6. ExamWorks next reminded

Smith of his IME appointment even after Smith's attorney revoked consent to receive any calls about his claim. *See* ECF Nos. 101-11 at 3, 101-14 at 8, & 101-15 at 11.

The Court first reached Smith's individual TCPA claim on Defendants' motion for summary judgment. ECF No. 116. The Court denied the motion because a genuine dispute remained not on whether Smith gave *a number* in which GEICO could contact him about his claim, but rather whether Smith gave GEICO *the* number that GEICO and ExamWorks had used to contact him. *Id.* at 8. After another round of class-related discovery, Smith now moves to certify the class, ECF Nos. 193 & 194, which Defendants oppose, ECF Nos. 203, 204, 211, & 213. Because the alleged TCPA violations are not capable of classwide resolution in this case, certification must be denied.

## II. Preliminary Questions Concerning the Relevant Record

### A. Smith's Motion to Strike (ECF No. 232)

Before reaching the question of class certification, the Court resolves outstanding motions to exclude certain evidence. Smith first moves to strike declarations of ExamWorks schedulers, putative class members, and Kurt Wassmer, CEO of Centiment, an all-in-one research platform used to conduct advanced surveys on targeted audiences. ECF No. 232; *see* ECF Nos. 211-7, 211-8, & 211-9.

Turning first to the declarations of putative class members, Smith argues that they ought to be stricken in fairness because the Court had confirmed that Smith would not contact class members. ECF No. 232 at 10. Smith also argues that the declarations are unreliable based on the way in which they were obtained. *Id.* at 7. ExamWorks's counsel submits attorney affidavits reflecting that counsel had disclosed to the interviewees the nature of this suit, confirmed that the interviewee did not have separate counsel, and advised them of the possibility that the interviewees

could be class members if the case were certified. *See* ECF Nos. 213-19 & 245 at 11. But ExamWorks' counsel did not discuss whether participation in the interview was voluntary, nor did they address whether the choice to not participate in the interview would affect any business relationship with ExamWorks. *See id.*

Certain of this Court's colleagues have expressed understandable reservation regarding unilateral contact with putative class members, due to the difficulties inherent in ensuring such communications are "neutral and balanced" in the context of class litigation. *L. Offs. of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*, Civil No. JKB-12-2600, 2013 WL 2552141, at *2 (D. Md. June 10, 2013). Those Courts have required more than what is offered here. Judge Blake, for example, found it sufficient when opposing counsel had provided the putative class interviewees "with a copy of [the] complaint" and explained "that their participation was completely voluntary," that defense counsel would not offer them "anything of value in exchange for their cooperation," that they may "consult a lawyer of their choosing before deciding whether to speak with [defense counsel] or sign any written statement," and "that they could decline to speak with [defense counsel] or to provide and sign a written statement . . . ." *Slavinski v. Columbia Ass'n, Inc.*, Civil No. CCB-08-890, 2011 WL 1310256, at *2 (D. Md. Mar. 30, 2011). Likewise, Judge Bredar excluded class-member affidavits because the record did not reflect similar efforts from defense counsel to ensure the statements were not subject to partisan influence. *Leonard*, 2013 WL 2552141, at *1.

The record here lies somewhere in the middle. Counsel certainly shared *some* important information about the lawsuit and the putative class members' place in it, but many of the other advisements that Judge Blake found critical were lacking. *See* ECF Nos. 213-19 & 245 at 11. Even so, the Court will refrain from striking the filings from the record because the information is

indeed relevant, and the Court does not consider ExamWorks's counsel to have engaged in misconduct, as Smith contends. *See* ECF No. 232 at 7. But in the end, the challenged evidence does not change the outcome of the class certification motion, principally because certification fails without consideration of these declarations. Accordingly, the Court will not consider the evidence regarding the putative class members, and deny the motion to strike as moot.[2]

The scheduler declarations command a different outcome. ExamWorks attached to its opposition declarations of three schedulers who largely confirm the previous testimony of ExamWorks's corporate designee, Brent Nalley: that ExamWorks schedulers often speak with claimants personally before any prerecorded reminder calls are placed, and in so doing, confirm the claimants' best contact phone numbers. ECF Nos. 213-5 at 7–9 (attesting to the "myriad of ways" ExamWorks receives referrals for IMEs and reaches out either to claimant or attorney to "verbally . . . confirm" the appointment before sending out appointment reminders); ECF No. 213-18 at 4–5. The schedulers also confirm that to the extent a claimant asks ExamWorks to use a different phone number, ExamWorks does not routinely capture the change apart from updating the best-contact phone number. *Id.* Nor does the Twilio software record whether the phone number associated with the claimant came from GEICO, the claimant, or both. ECF No. 211-7 at 9, 11, 14–15.

Smith singularly contends that because the three scheduler declarations were produced after the close of fact discovery, in fairness, the Court ought not to consider them. ECF No. 232 at 11; *see Dixon v. Blibaum & Assocs., P.C.*, Civ. No. JRR-24-0029, 2025 WL 1920006, at *3 (D. Md. July 11, 2025) (citing *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978)). But as

[2] Similarly, the Court denies as moot the motion to strike the declaration of Kurt Wassmer, ECF No. 232 at 10, who conducted an online survey concerning consumer appetite for automated appointment reminder calls, because even if the Court excluded the evidence, it would still deny class certification.

ExamWorks rightly points out, Smith *amended* the class definition after the close of fact discovery (but before the conclusion of expert discovery) in a manner that necessitated supplemental evidence.

Previously, the fourth prong of the class definition included claimants who "did not provide a cellular number called to *either GEICO or* ExamWorks." ECF No. 1 ¶ 28 (emphasis added). When Smith eliminated GEICO from the class definition in the Amended Complaint, Defendants had to pivot accordingly. *See* ECF No. 169 ¶ 28. While Smith is correct that the amended class definition narrowed the class, ECF No. 168 at 4, it also changed the nature of the case. Before the amendment, ExamWorks expected to defend the case largely on an intermediary liability theory—that provision of consent to GEICO for the purpose of the claim constituted sufficient consent to receive reminder messages for the claim-related IME from ExamWorks. *See* ECF No. 93-1 at 5–6. But once Smith narrowed the theory solely to ExamWorks, the schedulers' interactions with claimants became far more relevant to whether the class could be certified. ECF No. 245 at 23; *see* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of witnesses "that the disclosing party may use to support its claims or defenses").

On this point, Smith faults ExamWorks for not seeking to reopen fact discovery. ECF No. 247 at 4. But neither did Smith, even though he bears the burden of demonstrating the propriety of class certification, and even though he elected to alter the class definition after fact discovery ended. Nor does the Court view the additional three declarations as prejudicial to Smith because, for the most part, the declarations echo that which ExamWorks has adduced through other testimony. *See* ECF No. 211-5 at 6–10 (corporate designee Brent Nalley confirming prior testimony based in part on evidence gathered from "communication with the local to regional folks," *id.* at 6, (concerning the IME scheduling process for GEICO claimants); ECF No. 213-2 ¶

7 (Nalley confirming that during "various communications with claimants, claimants often confirm their preferred contact information directly to ExamWorks or occasionally provide a different number on which they would prefer to be contacted"). For these reasons, the Court denies Smith's motion to strike the scheduler declarations.

### B. Defendants' Motions to Exclude Woolfson's Opinions

Defendants separately move to exclude Smith's expert, Aaron Woolfson, contending that his professed methodology of identifying the putative class lacks reliability under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). ECF Nos. 206, 207, 210, 212, & 248. Although the Court recognizes that Woolfson's methodology is simplistic and perhaps would not survive expert challenge, it need not reach the merits of this motion now. This is because Woolfson, at best, identified calls to 5,552 unique cell phone numbers which he contends represent the universe of class members who received prerecorded calls from ExamWorks. But Smith's class certification motion fails even when considering Woolfson's opinions. Thus, the Court denies the motion to exclude as moot. [3]

The Court next turns to Smith's motion for class certification.

## III. Smith's Motion to Certify the Class (ECF No. 194)

Smith maintains that certification is appropriate under Rule 23(b)(3) because the common question of whether ExamWorks issued nonconsensual prerecorded calls in violation of the TCPA

[3] Defendants rightly challenge the reliability of Woolfson's "six second rule," whereby he assumes that any Twilio call made to a cellular number that lasted more than six seconds must have connected with the cell phone and left a prerecorded message on behalf of ExamWorks. ECF Nos. 210 at 9, 11 & 194-9 at 11, 13. This assumption appears inadequately supported and may very well lead to the exclusion of his opinions, if pressed. *See* ECF No. 210-2 at 11, 22–23 (Woolfson explaining the "six second rule" as based on a single "test" performed nine or ten years ago on a system other than Twilio, *id.* at 11, and having no response to the reliability of the six second rule as not accounting for varied times of individual callers' "leave a message" recordings, *id.* at 22–23). Woolfson is no stranger to Courts' limiting or excluding his opinions, *see* ECF No. 210 at 8 (collecting cases), and his cavalier retort that questions about the reliability of the six-second rule are for the "trier of fact" is plainly unsatisfactory, ECF No. 210-2 at 16 ("I think, at trial . . . trier of fact can make their determination so on and so forth.").

predominates over individual questions of law or fact, and classwide resolution is superior to other available methods of adjudication. ECF No. 194 at 10; *see* Fed. R. Civ. P. 23(b)(3); *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146–47 (4th Cir. 2001). The Court "has broad discretion in deciding whether to certify a class," so long as the Court's analysis is confined to the framework set forth in Rule 23. *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 317 (4th Cir 2006) (quoting *Lienhart.*, 255 F.3d at 146). The Court must engage in a "rigorous analysis" as to the propriety of class treatment, which will often incidentally "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *accord Off. of Gen. Treasurer ex rel. Emps. Ret. Sys. v. Boeing Co.*, 182 F.4th 422, 439 (4th Cir. 2026); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004). "The party seeking class certification must present evidence and demonstrate compliance with Rule 23." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 2845 (2025).

The Court begins with "an implicit threshold requirement that the members of a proposed class be 'readily identifiable'" or "ascertainab[le]." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell,* 462 F.2d 1053, 1055 (4th Cir. 1972)); *see also Krakauer*, 925 F.3d at 654–55 ("[A] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." (quoting *EQT Prod. Co.*, 764 F.3d at 358)). While not every individual of the class needs to be identifiable at the time of certification, the plaintiff must advance some mechanism to ascertain class members "without extensive and individualized fact-finding or 'mini-trials.'" *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)); *accord Krakauer*, 925 F.3d at 658 (quoting *EQT Prod. Co.*, 764 F.3d at 358).

If the class is ascertainable, the movant must next demonstrate the class meets the requirements of Rule 23(a): namely, (1) numerosity—"the class is so numerous that joinder of all members is impracticable;" (2) commonality—"there are questions of law or fact common to the class;" (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class; and" (4) adequacy—"the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer*, 925 F.3d at 654 (citation modified) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 349). Once Rule 23(a) is satisfied, the Court next considers whether the proposed class falls into one of the enumerated categories of classwide treatment available under Rule 23(b). Smith bears the burden of showing how "questions of law or fact common to class members predominate," and that class litigation "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Defendants argue that the class is not sufficiently ascertainable, individual issues predominate, and the proposed class cannot meet the Rule 23(a) typicality, adequacy and commonality requirements. ECF Nos. 204 & 213. The Court considers each factor in turn.

**A. Ascertainability**

Ascertainability asks whether the Court could identify the putative class in an administratively feasible way that eliminates the need for extensive fact finding. *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Marcus*, 687 F.3d at 593); *see also* 7A Charles Alan Wright et al., Federal Practice & Procedure § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless . . . it is administratively feasible for the court to determine whether a particular individual is a member."). To support ascertainability, Smith principally advances the Woolfson method of cabining the class claimants. *See* ECF No. 194 at 9. Woolfson's

methodology is simple: First, Woolson extracted from ExamWorks's Twilio records for GEICO claimants all phone numbers that received prerecorded calls lasting at least six seconds, "to remove any hypothetical argument that a prerecorded message might not have played." *Id.* at 4. Second, Woolfson excluded calls not placed to a cell phone. *Id.* From this, Woolfson identified 5,552 prerecorded calls made to the cell phone numbers of GEICO claimants. *Id.*; ECF No. 194-9 ¶ 47.

The problem for Smith, however, is that Woolfson does not account for those claimants who provided their cell phone numbers directly to ExamWorks during the IME scheduling process. Because Smith confines the class to those who did *not* provide a cell phone number to ExamWorks (and thus did not provide direct consent to be called), and because ExamWorks's schedulers directly obtain best call numbers from claimants on a regular basis, simply isolating those cell phone numbers that received prerecorded calls is insufficient to ascertain the class. *See* ECF No. 213-2 ¶ 7. Further, ExamWorks did not routinely capture every time a scheduler confirmed personally a claimant's best contact number. *Id.* ¶ 8. Accordingly, separating those claimants who did confirm a best-contact number from those who did not would require the Court to sift through individual case notes for each claimant. *See* ECF No. 213-7 ¶ 8; *see also id.* ¶ 9 (Supervisor Cindy Chynoweth explaining that during manual reminder calls, some claimants provide the case coordinator with a new number to be contacted). Certainly, discovery has not borne out an administratively feasible method short of individual examination. *See Marcus*, 687 F.3d at 593. Thus, Smith has not demonstrated the ascertainability of the class. *See Davis*, 2023 WL 6964051, at *12 (denying class certification on ascertainability grounds); *cf. Career Counseling, Inc.*, 91 F.4th at 207, 211 (class not "readily identifiable" if district court must "make an individualized inquiry" as between those class members using standalone fax machines versus online fax

services). This failure alone compels denial of certification. But for similar reasons, Smith does not carry his Rule 23(a) burden.

**B. Rule 23(a) Requirements**

Turning next to the four class requirements under Rule 23(a)—numerosity, commonality, typicality, and adequacy—Defendants focus on the lack of commonality, typicality, and adequacy. And so will the Court.[4]

**i. Typicality**

The Court begins with the typicality requirement. To meet his burden, Smith must demonstrate that his claims are aligned and consistent with those of the class. Fed. R. Civ. P. 23(a)(3). A certain degree of relatedness is required "so that the court may properly attribute a collective nature to the challenged conduct." *Boyd v. Coventry Health Care Inc*., 299 F.R.D. 451, 458 (D. Md. 2014) (quoting *Hewlett v. Premier Salons Int'l*, *Inc.*, 185 F.R.D. 211, 217 (D. Md. 1997)). Generally, the named plaintiff's claim is considered typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 136 (E.D.N.C. 2018) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). If the named plaintiff's proof does not "tend to advance the interests of absent class members," *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006), then his claims are not "typical" of the class he represents. Typicality also implicates due process, as it determines "whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." *In re Marriott International, Inc., Customer Data Security*

[4] The Court assumes for purposes of this analysis that the class is sufficiently numerous based on the 5,552 identified phone numbers receiving calls such that classwide treatment is preferable over individual claims, although the Court acknowledges Defendants' well-founded methodological concerns. *See* ECF No. 207.

*Breach Litig.*, 342 F.R.D. 128, 146 (D. Md. 2022) (quoting *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 56 (E.D. Va. 2021)).

Defendants urge that Smith's claims stand alone because his liability theory turns not on whether he did, or did not, give *a number* to ExamWorks, but whether GEICO used *the right number* for his claim in the first place. In this respect, Smith "raises a unique intermediary consent issue," involving the GEICO insured. ECF No. 204 at 20. The Court agrees.

The amended class definition concerns the non-provision of a cellular number to ExamWorks, not to GEICO. *Id.* But nothing about Smith's case ever turned on not providing a number to ExamWorks—Smith's supposed lack of consent arose from GEICO's giving ExamWorks a different number than the one Smith provided to the insured. ECF No. 211 at 11. Also, before ExamWorks ever became involved, Smith's counsel withdrew consent for direct contact. *Id.* at 11–12. Thus, success on his individual claim turns on GEICO's provision of the wrong number to ExamWorks and on his lawyer's revocation of consent, regardless of how ExamWorks did or did not receive his number. *See* ECF No. 211-10 at 10 (Q: "So you're suing ExamWorks because they shouldn't have been calling you once you had a lawyer?" A: "Exactly.").

Smith's self-admitted destruction of his cell phone well illustrates the atypicality of Smith's claim. Smith testified that he threw the cell phone on which he had received ExamWorks's automated appointment reminders into the Mississippi River. ECF No. 211-10 at 43–44. For Smith, the destruction of the phone presents unique evidentiary challenges because his TCPA claim turns on his asserted contemporaneous possession of two phones and two cell phone numbers: one phone he used for daily communication and the other for video calls and games. He further testified that he gave only one of the numbers to the insured as part of the claim, but ExamWorks called him on his *other* number. ECF No. 101-18 at 9–10, 13. Now that he destroyed

one of the two cell phones, Defendants are deprived of any ability to forensically analyze the phone to confirm or dispel his claims. But for the rest of the putative class, Smith's destroyed cell phone matters not at all. The inquiry instead turns on whether a putative class member gave ExamWorks the cell phone number that it used to place the prerecorded appointment reminder.

For similar reasons, Smith is a poor vessel through which to test the typical class claim, as Defendants are unable to bring key defenses that they would likely use against the broader class. For example, Smith's individual TCPA claim turns on ExamWorks's having placed prerecorded appointment reminder calls on one of his two cell phone numbers after his attorney expressly revoked consent to call. But for the putative class, ExamWorks will necessarily focus on the myriad ways it obtained the "best contact" phone numbers for the claimants. It simply cannot press this critical defense through Smith as the class representative. Because Smith's individual claim does not depend on remotely the same factual predicate as the putative class, his claim cannot be considered "typical" of the class. This alone dooms certification.

**ii. Adequacy**

The Court next turns to whether the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). The inquiry is twofold. The Court must ask whether class counsel is sufficiently qualified and experienced to pursue class claims, and whether "the [class] representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation." *Hewlett*, 185 F.R.D. at 218.

The Court begins with whether Smith is an adequate representative of the class. This question overlaps substantially with the typicality inquiry because typicality "goes to the heart of a representative part[y's] ability to represent a class." *Deiter*, 436 F.3d at 466 (4th Cir. 2006);

*see also Stafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671, 682 (4th Cir. 2024) (explaining overlap between the typicality requirement and the adequate representation requirement). As discussed, Smith's claims stand in stark contrast to the putative class. And so, for the same reasons, Smith does not adequately represent the class.

Separately, Smith appears to lack the basic capacity to function as a class representative. To be sure, a "representative need not have extensive knowledge . . . of the case" to be considered adequate. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003). But he must possess a minimally basic understanding of his role as class representative so that he is more than a mere "pawn of attorneys who seek a large fee award." *Hewlett*, 185 F.R.D. at 218 (citing *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121 (N.D. Ill. 1990)). Accordingly, the class representative must have *some* basic notion about the litigation to avoid being a hapless dupe for the litigation aims of his attorneys. *Id.*; *see also Shiring v. Tier Techs, Inc.*, 244 F.R.D. 307, 315 (E.D. Va. 2007).

As to the basics, Smith knows next to nothing. Although the case has been pending for years, Smith, when deposed in 2025, could not articulate even a basic understanding of his role as class representative. ECF No. 211-10 at 15. Smith could not describe, even in layperson's terms, anything he is expected to do to represent the class. *Id.* at 15–17. He knew little to nothing about the case, its posture, or his duties as class representative. *Id.* at 20–24. He did not even know in what state the case was filed. *Id.* at 23. Nor did he know that Defendants had offered to settle his individual claims for $20,000. *Id.* at 46. He also had no appreciation that the cell phone on which he received the very prerecorded calls in question should not have been thrown into the river. *Id.* at 43–44. Thus, while a class representative need not know much,

Smith knows almost nothing. This certainly contributes to the Court's determination that Smith cannot adequately represent the putative class.

Turning next to adequacy of class counsel, the Court "presume[s] that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Hewlett*, 185 F.R.D. at 218. Defendants do not question counsels' qualifications or competence in the substantive area of TCPA class litigation. Rather, they solely argue that counsels' continued use of a "springing fee" after having been admonished in a prior TCPA class case renders them inadequate. ECF No. 211 at 11. Although the Court shares the concerns regarding the fee agreement that Smith and counsel struck, it is not sufficient to render counsel inadequate.

It is undisputed that in the past, counsel has used fee agreements which appear to limit a class representative's ability to settle his TCPA claims against counsels' advice. In the matter of *Sliwa v. Bright House Networks*, 333 F.R.D. 255 (M.D. Fla. 2019), Smith's counsel represented the named plaintiff, Sliwa, in a TCPA class action. *Id.* at 262. The *Sliwa* Court admonished class counsel for executing a fee agreement with Sliwa that obligated him to repay counsels' high hourly fees in the event Sliwa settled his individual case against counsels' advice. *Id.* at 277–78. The Court particularly advised counsel that the fee provision likely violated Rule 4-1.5(a) of the Rules Regulating the Florida Bar, which prohibits a lawyer from charging a "clearly excessive fee or cost." *Id.* at 278 (quoting Fla. State Bar Rule 4-1.5(a)). Ultimately, the Court concluded that because counsel subsequently struck the offending provision from Sliwa's agreement, the agreement no longer prejudiced the potential class or adversely affected resolution of the matter on the merits. *Id.*

Although counsel for Smith correctly argues that the precise wording of Smith's agreement does not mirror that of Sliwa's, the same problem persists. Smith's agreement reads:

> In the event a classwide resolution cannot be obtained and Client's claims are resolved individually, Attorneys will receive the greater of (a) forty (40%) of the total settlement proceeds, award or judgment, if any; or (b) the amount of any attorneys' fees reasonably incurred.

ECF No. 213-16 at 4–5. Accordingly, once again, if Smith settles his TCPA claim individually with Defendants, his counsel will take either 40% of the settlement award *or* if attorneys' fees exceed the 40% fee, they will extract the as much of the award necessary to cover the attorneys' incurred fees. ECF No. 213 at 15.

Add to this, Defendants *did* extend an individual settlement offer to Smith of $20,000, about which—according to Smith at his deposition—he never knew. ECF No. 230-4 at 11. While his lawyers' failure to communicate a handsome settlement offer to Smith raises separate concerns about counsels' loyalty to their client, the settlement offer itself highlights the fundamental problem with the fee provision. To compensate Smith for the nuisance of a few "robot calls" as he describes them, *id.* at 3, $20,000 is generous. But considering the discovery conducted on Smith's individual claim alone, Smith likely would receive little to no settlement award because the settlement amount would be swallowed by the attorneys' fees incurred at that time. As the agreement reflects, Smith had *eight* attorneys who all charged hourly rates north of $500. ECF No. 213-16 at 5. And where, as here, the fee owed to counsel likely will exceed 50% of the recovery in the end, then the attorneys will bear a greater interest in the outcome of the litigation than the client. *See Att'y Grievance Comm'n v. Korotki*, 318 Md. 646, 649 (1990) (suspending counsel for eighteen months for progressive escalation of 40% contingency fee to 75% as a "particularly aggravated case of greed overriding professionalism").

Maryland's Rules of Professional Conduct mirror those of most states, including Florida, prohibiting an attorney's extraction of excessive fees precisely to prevent counsel having an

outsized financial interest in the direction of the litigation. *See* Md. R. Prof. Conduct 1.5.[5] Accordingly, and as local counsel for Smith acknowledged at the hearing, contingency fee arrangements that exceed 50% are strongly discouraged as unreasonable and unethical. *Korotki*, 318 Md. at 665; *see also Att'y Grievance Comm'n v. Roberson*, 373 Md. 328, 357 (2003) (finding a 50% contingency on all funds recovered plus additional obligations to be a "clearly excessive fee" warranting disbarment). Remarkably, however, counsels' only retort to this ethically problematic provision was that they never have, in fact, kept greater than 50% of any settlement award. This misses the point. Where hourly rates quickly eclipse any reasonable settlement offer for a TCPA violation, the plaintiff-client is strongly disincentivized to settle the case, even though absent the offending provision, he might otherwise jump at the offer. Class counsel—experienced attorneys for sure—know this, and yet they persist in dancing too close to the fire as to the method of their compensation. *Cf. Sliwa*, 333 F.R.D. at 277–78.

Nonetheless, the Court is loathe to conclude that this alone renders counsel inadequate under Rule 23. Rather, any claimed misconduct as to Smith's fee agreement is best handled by barring agencies that are responsible for maintaining standards of professional conduct, not by denial of class certification. *See id.* at 278 (concluding that discipline, but not denial of class certification, is warranted where "the previous fee agreement may have prejudiced Plaintiff

[5] *See* Ala. R. Prof. Cond. 1.5; Alaska Rule of Prof. Conduct 1.5; Ariz. Rules of Prof. Conduct, ER 1.5; Ark. R. Prof'l Conduct 1.5; Colo. R. Prof'l Cond. 1.5; Conn. Rule of Prof. Conduct 1.5; Del. Rule of Prof. Conduct 1.5; D.C. Rule of Prof. Conduct 1.5; Fla. State Bar Rule 4-1.5; Ga. RPC Rule 1.5; Guam R. Prof. Conduct 1.5; Haw. R. Prof. Conduct 1.5; Idaho Rule of Prof. Conduct 1.5; Ill. R. Prof. Conduct 1.5; Ind. Rule of Prof. Conduct 1.5; Iowa R. Prof'l Conduct 32:1.5; Kan. R. Prof. Conduct 1.5; Ky. Sup. Ct. Rule 3.130-1.5; La. R. Prof. Conduct 1.5; Me. Rule of Prof. Conduct 1.5; Mass. Rule of Prof. Conduct 1.5; Mich. R. Prof. Conduct 1.5; Minn. R. Prof. Cond. 1.5; Miss. Rule of Prof. Conduct 1.5; Mo. R. Bar Rule 4-1.5; Mont. R. Prof. Conduct 1.5; Neb. R. Prof. Conduct § 3-501.5; Nev. R. Prof. Conduct 1.5; N.H. Rule of Prof. Conduct 1.5; N.J. R. Prof. Conduct 1.5; Rule 16-105 NMRA; N.Y. R. Prof. Conduct 1.5; N.C. R. Prof. Conduct 1.5; N.D. Rule of Prof. Conduct 1.5; Ohio R. Prof. Conduct 1.5; Okla. R. Prof. Conduct 1.5; Or. Rule of Prof. Conduct 1.5; Pa. R. Prof. Conduct 1.5; R.I. R. Prof. Conduct 1.5; S.C. R. Prof. Conduct 1.5; SDCL ch. 16–18 App. Rule 1.5; Tenn. R. Prof. Conduct 1.5; Tex. Disciplinary R. Prof'l Conduct 1.04; Utah R. Prof. Conduct 1.5; Vt. Rule of Prof. Conduct 1.5; Va. R. Prof. Conduct 1.5; Wash. RPC 1.5; W. Va. R. Prof. Conduct 1.5; Wis. Sup. Ct. R. 20:1.5; Wyo. R. Prof. Conduct 1.5.

*individually* by preventing him from accepting Defendants' settlement offer on an individual basis").[6] The Court will not find that class counsel cannot adequately represent the class.

In sum, although class counsel may be "adequate" in the Rule 23 sense, Smith is not. And because he is not an adequate representative of the class, certification is denied on this basis.

**iii. Commonality & Predominance**

Commonality and predominance are closely aligned, with the required showing for predominance being the more "demanding" of the two. *Amchem Prods., Inc.*, 521 U.S. at 624. Thus, the Court concentrates on predominance.

Rule 23(b)(3) requires Smith to show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This analysis "is a qualitative one, a question of whether the complexities of common issues outweigh that of individual issues, even if quantitatively there are more individual issues." *Harbourt v. PPE Casino Resorts Md., LLC*, Civil No. CCB-16-339, 2017 WL 281992, at *6 (D. Md. Jan. 23, 2017). The showing turns on whether sufficient "questions common to the class predominate," not whether "those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013) (citation modified). This is because the Rule 23 inquiry focuses not on a merits-based resolution, but whether the method of resolution is best suited to classwide treatment. *Id.*

The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in the case." *Krakauer*, 925 F.3d at 658 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). This requirement can be met "even though

---

[6] For similar reasons, the Court denies ExamWorks's separate sanctions motion, ECF No. 209, without prejudice. Because the improper fee agreement is best handled as an ethics inquiry, ExamWorks is free to refer the matter to either this Court's Disciplinary and Admissions Committee or the relevant state barring agencies. If this Court's Committee receives such a complaint, the undersigned will recuse from all consideration of the matter.

other important matters will have to be tried separately." *Id*. (quoting Wright et al., supra, § 1778). So, where facts relevant to the class representative are common to the class as to demonstrating the liability of the defendant, this inquiry cuts in favor of certification.

The class is defined as those claimants who received prerecorded appointment reminders but who did not provide a phone number to ExamWorks. ECF No. 194 at 2. Provision of the cell phone number, or lack thereof, is the factual predicate by which Smith elected to circumscribe the class. On this question, Defendants rightly point out that ExamWorks interacted with the individual claimants in varied ways to obtain the best-contact number. So questions of consent will be particular to the interaction between the claimant and ExamWorks. ECF Nos. 204 at 15 & 213 at 22. And because these "claimant-specific communications" dictate whether the claimant provided a cell phone number, individual factual questions abound on the critical question of consent, negating predominance. *Id.* at 5.

Smith responds that the singular salient question for the class is one of law: whether "consent" for purposes of the TCPA is consent to "receive *robocalls*," not consent as reflected through the mere provision of a cell phone number. ECF No. 221 at 6. He argues that whether this Court should defer to the FCC's interpretation that "express consent" means "consent to receive calls" in light of *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), is itself a question that can be resolved for the entirety of the class "in one stroke." ECF No. 230 at 17–18.

Smith's statutory interpretation argument fails, and with it fails predominance. While the merits of Smith's claim are not yet before the Court, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc.*, 564 U.S. at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Accordingly, it is well within the Court's purview to decide relevant questions

of law at the class certification stage. *See EQT Prod. Co.*, 764 F.3d at 361 ("Prior to certifying a class, a district court must definitively determine that the requirements of Rule 23 have been satisfied, even if that determination requires the court to resolve an important merits issue."); *see also Amchem Prods., Inc.*, 521 U.S. at 625 (holding that class certification fails on multiple Rule 23 factors while just one ground would suffice). The Court finds it prudent to address the proper meaning of "consent" under the TCPA in response to Smith's predominance contention.

The plain language of the TCPA is clear. The phrase "made with the prior express consent of the called party," modifies "any call," not "any call using any . . . prerecorded voice." *Id.* Thus, it is the *call* that is consented to, not the use of the prerecorded voice. The provision of the phone number thus reflects an individual's consent to be called for a particular purpose, and not necessarily a more specific agreement to accept prerecorded calls. *See Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 812 (5th Cir. 2026) (providing a cell phone number in a service agreement constitutes consent under the TCPA); *see, e.g.*, *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 792–93 (9th Cir. 2018) ("To fall within the 'prior express consent' exception, a call must relate to the reason why the called party provided his or her phone number in the first place."); *cf. Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 53 (2d Cir. 2018) (patient providing phone number on intake forms for treatment constitutes express consent to receive text message about flu vaccination).

While perhaps not binding on this Court, implementing regulations promulgated by the Federal Communications Commission ("FCC")[7] are consistent with this interpretation. The FCC has construed "prior express consent" as needing no more than provision of a telephone number

[7] Congress empowered the FCC to create exemptions to statutory liability "by rule or order." *See* § 227(b)(2)(B); *see also Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 681 (D. Md. 2017) (collecting cases); *Derossett*, WL 4448859, at *9.

"for a particular purpose." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 P2p All. Petition for Clarification*, 35 F.C.C. Rcd. 6526, 6530 ¶ 13 (2020). This is so because the knowing release of a phone number "for a particular purpose," in effect, constitutes "permission to be called at the number . . . absent instructions to the contrary." *Id.*; *see In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd 559, 564 ¶ 9 (2008) (confirming that the release of a cell phone number to a creditor extended prior express consent to a third-party debt collector calling on behalf of the creditor to collect the debt related to that transaction).[8] Because consent under the TCPA is more expansive than express consent to be robocalled, class claims will turn on issues beyond the mere disclosure of a phone number to ExamWorks. Therefore, common questions do not predominate.

Smith's question-of-law argument, in the end, is also too clever by half, because it runs counter to how Smith chose to define the putative class. The class is circumscribed to those who did *not* provide a cell phone number to Examworks—thus excluding those who did—as a means of determining who consented to receive prerecorded appointment reminders. ECF No. 169 ¶ 28. Smith now presses that consent is not simply reflected in provision of a phone number because consent must be to the robocall itself. Smith's argument, if accepted, creates the perverse outcome of excluding from the putative class those who should be included; for if as Smith contends, "consent to receive robocalls" is the predominant legal question, then the fourth prong of the class definition—failure to provide a phone number—is irrelevant. Whether a claimant provided a

[8] More recently the FCC distinguished between telemarketing cold calls, which require "prior express written consent," from robocalls that provide "informational messages closely related to the service" that individuals "signed up for," for which provision of the phone number alone constitutes consent, "absent instructions to the contrary." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Edison Elec. Inst. Petition for Declaratory Ruling*, CG Docket No. 02-278, 2025 WL 1915881, at *1 ¶ 4 (2025); *see id.* at *1 n.9 (citing to *Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991, U.S. Dep't of Health and Hum. Servs. Petition for Declaratory Ruling*, CG Docket No. 02-278, Declaratory Ruling, 38 FCC Rcd 404, 409, ¶ 13–14 (2023), for the proposition that providing a phone number on a government health benefits application constitutes consent to be called about eligibility or enrollment in relevant programs).

phone number does not determine whether the same claimant agreed to receive a *robocall*. A claimant certainly could have provided a phone number so that an Examworks scheduler could reach her, but not agree to receive a prerecorded call specifically. Thus, this novel question of law, as interesting as it may be, cannot be considered central to the class as defined.

Moreover, even if the question turned on consent to receive robocalls, ExamWorks has demonstrated that the IME scheduling process is so varied and individualized that mining the issue of consent to receive a prerecorded call is not capable of classwide resolution. Schedulers at times did tell claimants about reminder calls and allow them to opt out, as did Smith. ECF No. 101-14 at 8, 10; *see also* ECF No. 194-5 at 7 (demonstrating that "[e]very case is somewhat different" and that ExamWorks uses case history notes to document correspondence with the claimant or claimant's attorney); ECF No. 194-6 at 5 (explaining that the Twilio call system "defaults" to make appointment reminder calls but "there are several different avenues that would give our user the opportunity to discontinue the calls in the event someone asked [ExamWorks] to do so, as in the case of Mr. Smith"); ECF No. 213-7 at 5–6 (explaining that ExamWorks may obtain a claimant's phone number at various points in the scheduling process or from the claimant's lawyer or insurer); ECF No. 204-1 at 8–9 (explaining that GEICO's Atlas system possesses a "personal information verified indicator" feature for each case file which allows a CSR to confirm a claimant's contact information). So even if this Court agreed with Smith that the consent to robocall question predominates, it would not fix the fact that whether any given claimant agreed or refused to receive robocalls would require individualized inquiry.

Nor does Smith's heavy reliance on *Mey v. Liberty Home Guard, LLC*, Civil Action No. 5:23-CV-281, 2025 WL 4348808 (N.D.W. Va. Dec. 3, 2025), *vacated*, No. 5:23-CV-281, 2026 WL 1458995 (N.D.W. Va. May 5, 2026), alter the predominance analysis. Smith contends that

*Mey*, as here, permitted class certification where "consent was achieved *through a common method*." *Id.* at *9 (emphasis added). But that is not this. Smith has not shown the existence of a streamlined "common method" for determining each class member's consent in connection with the IME scheduling process. Rather, provision or revocation of consent depends on the claimant's individual interactions with the ExamWorks schedulers, which defeats predominance. *See, e.g.*, *Ginwright*, 280 F. Supp. at 687 ("[R]esolution of [whether Defendant's calls violated the TCPA] for a particular class member likely depends on the circumstances surrounding the individual class member's consent, or lack of consent, to receive prerecorded calls from Exeter, whether the class member revoked consent, and whether Exeter complied with those instructions"); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468–69 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (6th Cir.) ("Regardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation. . . . [I]dentifying these individuals 'would require manually cross-checking 450,000 potential consent forms against the 53,502 potential class members.' Identifying solicited fax recipients through a form-by-form inquiry is sufficiently individualized to preclude class certification." (citation omitted)); *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 323 (5th Cir. 2008) ("[T]here is no classwide basis by which to distinguish those fax recipients who had consented to receiving faxes from those who had not consented, which suggests that the determination of consent, or the lack thereof, would require hundreds of mini-trials."); *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291–92 (7th Cir. 2018), *reh'g & reh'g en banc denied* (7th Cir. 2019). While "the TCPA clearly supports classwide resolution in the abstract," *Krakauer*,

925 F.3d at 656, it is not the superior method of resolution here. Thus, the motion for class certification is denied.[9]

## IV. Conclusion

For the foregoing reasons, the Court denies the motion to certify the class, ECF Nos. 193 & 194; denies as moot the motions to exclude the testimony of Aaron Woolfson, ECF Nos. 206, 207, 210, 212, & 248; denies the motion for nonmonetary sanctions and in-person hearing, ECF No. 209; denies in part the motion to strike, ECF No. 232; and denies the motion for leave to file a surreply, ECF No. 242. The Court grants the consent motion for leave to file excess pages, ECF No. 219, and the motions to seal, ECF Nos. 195, 205, 208, 214, 222, 225, 228, 231, & 236.

A separate Order follows.

September 21, 2026 /s/
Date Paula Xinis
United States District Judge

[9] The Court also denies ExamWorks's motion for leave to file a surreply. ECF No. 242. Surreplies are disfavored, permitted only to address new issues raised in reply for the first time. *See In re Erickson Ret. Cmtys., LLC*, Civil No. WDQ-11-3736, 2012 WL 1999493, at *2 (D. Md. June 1, 2012) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)). The Court views the proposed surreply as simply taking another crack at the issues fairly presented in the prior memoranda.